E-FILED
Thursday, 19 December, 2019  09:16:54 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **KEITH D. HILL,** | )<br>) |
| **Plaintiff,** | ) |
| v. | )  No.: 19-cv-4188-JBM |
| | ) |
| **DR. PAULA LODGE, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MERIT REVIEW –COMPLAINT

Plaintiff, proceeding *pro se,* files a complaint pursuant to 42 U.S.C. § 1983. Plaintiff is a civil detainee at the Rushville Treatment and Detention Center, seeking leave to proceed *in forma pauperis*. The "privilege to proceed without posting security for costs and fees is reserved to the many truly impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them." *Brewster v. North Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972). A court must dismiss cases proceeding *in forma pauperis* "at any time" if the action is frivolous, malicious, or fails to state a claim, even if part of the filing fee has been paid. 28 U.S.C. § 1915(d)(2). Accordingly, this Court grants leave to proceed in forma pauperis only if the complaint states a federal claim.

In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "'state a claim for relief that is plausible on its face.'" *Alexander v. U.S.*, 721 F.3d 418, 422 (7th Cir. 2013)(quoted cite omitted).

## MATERIAL FACTS

Plaintiff is civilly detained at the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Commitment Act, 725 ILCS 207/1, *et seq*. The Court notes that Plaintiff has included 37 pages of attachments with his complaint. These attachments include grievances, responses to grievances and Committee findings. These extraneous materials have not been considered by the Court in this merit review order. *See Fitzgerald v. Dep't of Corr.*, No. 07-61, 2007 WL 951861, at *1 (W.D. Wis. Mar. 26, 2007) (declining to review grievances and responses at merit review as not "necessary to the complaint.")

Plaintiff complains, generally, that Defendant Lodge, head of the Rooming Committee, will not allow him to choose his roommate. Plaintiff claims that in "Summer/Fall of 2018," he was placed with Mr. Wilborn, a "non-requested roommate." He claims that Mr. Wilborn openly spoke of the rapes he had committed and would unnerve Plaintiff by staring at him as Plaintiff lay in bed. When Mr. Wilborn threatened to rape Plaintiff, Plaintiff filled out an incident report and was "shortly moved."

In the Winter of 2018-19, Plaintiff was placed with a new roommate, Mr. Badger. Plaintiff complained that the roommate would expose himself to female staff members but does not claim that Badger was sexually inappropriate toward him. Plaintiff was nonetheless moved and given a different roommate. He finds fault with Defendant Lodge, however, for "put[ting] Plaintiff into the situation."

Plaintiff next roommate was Mr. Howard. Plaintiff alleges that he and Mr. Howard had many disagreements due to different living styles. He also claims, without detail, that he was threatened by Mr. Howard. Plaintiff was moved but, once again, blames Defendant Lodge for initially placing him with Mr. Howard.

In the Winter/Spring of 2019, Plaintiff was placed with Mr. Madison, another roommate whom he had not requested. Plaintiff describes the latest roommate as "mentally challenged and problematic." Plaintiff claims that, once again, he was stalked and stared at by his roommate. Plaintiff was then placed with Mr. Cozart whom he also describes as a stalker. Plaintiff alleges that Mr. Cozart was known for exposing himself and masturbating in front of female staff. Once again, Plaintiff was moved, though he faults Defendant Lodge for placing him with Mr. Cozart.

Plaintiff's next roommate was Randy Williams who, Plaintiff alleges, was violent toward others. Plaintiff claims that Williams was known to have thrown a microwave at a resident. Plaintiff also provides a signed statement from another resident who claims that in the Spring of 2019, Mr. Williams attacked him, placing his hands around the resident's neck. Plaintiff does not, however, claim that Mr. Williams was violent or threatened violence with him. Plaintiff asked to be moved and, at a September 11, 2019 treatment staffing meeting, Defendant Lodge told Plaintiff "it was not going to happen."

Plaintiff indicates that he has found an individual whom he believes would be a compatible roommate. Plaintiff has requested to be placed with this individual, but his requests have been ignored. Plaintiff claims that that this lack of response and his placement with troublesome roommates has left him feeling "unheard, overwhelmed, powerless, suspicious, broken and suicidal."

Plaintiff also alleges issues regarding his mental health treatment. On an unidentified date, Plaintiff informed Defendant Morton, a Special Therapy Aide II ("STA"), that he was suicidal, requesting a mental health evaluation. Plaintiff claims that Defendant Morton recommended that he wait until "after the picnic" to receive treatment as he would otherwise be kept for 72 hours. While the import of this statement is not clear, it appears that Defendant

3

Hymes was advising Plaintiff that if his suicidal feelings were known, Plaintiff would be subjected to 72 hours of suicide precautions and miss the picnic.

Plaintiff also claims that on September 13, 2019, Defendants Lodge and Hymes forced him to read aloud letters he had written in group treatment. Plaintiff claims that, as he is not in Phase II where residents must take responsibility for their actions, he should not have been forced to read the letters. Plaintiff claims that after the reading, Defendant Hymes announced that Plaintiff "was the most dangerous resident in the facility." Plaintiff claims that Defendants Lodge and Hymes were deliberately indifferent as they subjected him to "shame-based" treatment.

Plaintiff claims, further, that he was not permitted to speak with Liberty Health Care employees to obtain "clarity" as to his treatment. These claims as to Plaintiff's mental health treatment, however, are unrelated to the identified housing issues and represent an impermissible misjoinder. *See George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007), "[u]nrelated claims against different defendants belong in different suits." In other words, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." Defendants are properly joined in a single action only if they are parties to a single transaction or occurrence common to all defendants, and the claims against them involve a common question of fact or law. *Ghashiyah v. Frank*, 05-C-0766, 2008 WL 680203, at *2 (E.D. Wis. Mar. 10, 2008). These claims will be dismissed without prejudice.

Plaintiff requests compensatory and punitive damages as well as injunctive relief. The injunctive relief is a transfer from the Blue Team and a Court order that Defendants "stop the lack of concern, lack of care for Plaintiff Keith D. Hill, and stop exposing him to dangerous living conditions." He also requests approval of the roommate request he had submitted.

4

**ANALYSIS**

While Plaintiff might assert otherwise, the caselaw is clear that he does not have a constitutional right to the roommate of his choosing. *See Riccardo v. Rausch*, 375 F.3d 521, 525–26 (7th Cir. 2004). "Illinois is free, if it wishes, to give prisoners veto power over the identity of their cellmates. But the eighth amendment does not do so of its own force, and prisoners cannot use the Constitution to achieve this control indirectly by making unsubstantiated assertions." *See also*, *Smego v. Weitl*, 13-3068, 2016 WL 10934368, at *7 (C.D. Ill. Dec. 6, 2016), *aff'd sub nom. Smego v. Jumper*, 707 Fed. Appx. 411 (7th Cir. 2017) (civil detainee does not have a right to "a roommate of his own choosing.") As a result, Plaintiff does not have a claim against Defendant Lodge for not placing him with the roommate he requested. He also fails to state a claim for Defendant Lodge having placed him with Wilborn, Badger, Howard, Madison, and Cozart. When Plaintiff complained about safety issues with these individuals, he was moved with no apparent delay.

While Plaintiff claims that his roommate Williams had some history of violence, he does not claim that Williams particularly exhibited violence toward his roommates and admittedly did not do so toward Plaintiff. For a Defendant to be deliberately indifferent to potential harm, the defendant must have known of a "substantial risk of serious harm" to plaintiff and to have "disregard[ed] that risk by failing to take reasonable measures to abate it." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Plaintiff's allegations here are insufficient to successfully plead a plausible deliberate indifferent claim against Defendant Lodge for placing him with Williams and, subsequently, refusing to move him.

Plaintiff's claims as to his mental health treatment are DISMISSED for misjoinder, without prejudice to Plaintiff filing these claims in a separate action with responsibility for the attendant fees.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's petition to proceed in forma pauperis [3] is DENIED as his complaint is DISMISSED, without prejudice, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff's claims regarding his mental health treatment are DISMISSED for misjoinder. If Plaintiff wishes to proceed on these claims, he must file them as a separate cause of action with responsibility for the initial filing fee.

2) The Clerk has docketed [5], identified as a Declaration of Plaintiff Keith D. Hill. The Declaration, however, was authored by another Rushville resident, Mr. An'dre Adams and is essentially a denunciation of Mr. Hill. While Mr. Adams claims to be filing this Declaration on behalf of Defendants, Defendants have not been served and are currently not represented. [5] is STRICKEN. The Clerk is to accept no further filings in this case from Mr. Adams.

12/19/2019
ENTERED

s/ Joe Billy McDade
JOE BILLY McDADE
UNITED STATES DISTRICT JUDGE